UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

BLUE DRAFT CORPORATION,

Debtor.
---------------------------------------------------------------x

Chapter 11 (Subchapter V)

Case No. 1-26-44517 (JMM)

**DEBTOR'S OBJECTION TO APPLICATION OF VOLT ELECTRIC INC. FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING THE PRODUCTION OF DOCUMENTS BY, AND THE EXAMINATION OF, BLUE DRAFT CORPORATION**

TO THE HONORABLE JIL MAZER-MARINO,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Blue Draft Corporation, the debtor and debtor in possession (the "Debtor"), by its counsel, the Law Office of Barry E. Janay, P.C., submits this objection (the "Objection") to the *Application Seeking Entry of an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Directing the Production of Documents by, and the Examination of Blue Draft Corporation*, dated October 29, 2026 and re-filed on November 6, 2026 (the "Application"), filed by Volt Electric Inc. ("Volt"). In support, the Debtor respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. Volt is the plaintiff in a pending lawsuit against the Debtor in the Superior Court of New Jersey. The Debtor disputes Volt's claim. The Application asks this Court to give Volt, through Rule 2004, the discovery it would otherwise have to pursue under the Federal Rules of Civil Procedure: "[a]ll documents relating to all of Debtor's transactions with VOLT ELECTRIC INC.," the Debtor's contracts, bids and customer records, and examination of two officers on "[a]ny pending or contemplated litigation involving the Debtor." And it asks, in the same breath, that this case be dismissed under section 1112(b) of the Bankruptcy Code.

2. Courts in this Circuit have refused to permit exactly this. A creditor that has sued the debtor elsewhere may not use Rule 2004 "for the improper purpose of obtaining discovery for

the pending state court civil litigation." *In re Bibhu LLC*, No. 17-10042, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019). The Application's only stated basis—a list of supposed gaps in the Debtor's original schedules—consists of conclusory assertions, unsupported by any declaration, several of which are contradicted by amended schedules the Debtor filed eight weeks before Volt filed the Application. Volt's counsel has already examined the Debtor's principal under oath at the meeting of creditors, and Volt never raised its concerns with the Debtor before filing. The Application should be denied.

**BACKGROUND**

3. On August 7, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey. The case was later transferred to this Court. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code. Gerard R. Luckman, Esq. has been appointed as the Subchapter V Trustee.

4. The Debtor is a construction company that performs projects in New York and New Jersey. Before the Petition Date, Volt commenced an action against the Debtor captioned *Volt Electric Inc. v. Blue Draft Corporation*, Docket No. UNN-L-004101-24, in the Superior Court of New Jersey, Law Division, Union County (the "State Court Action"). The State Court Action is stayed as to the Debtor by section 362(a) of the Bankruptcy Code. Volt asserts a claim of approximately $144,252.00 (Application ¶ 4). The Debtor disputes that claim and reserves all rights with respect to it, including rights of objection, setoff and recoupment.

5. The Debtor's president, Wojciech Ostrowski, appeared for the initial debtor interview conducted by the Office of the United States Trustee (the "U.S. Trustee") on October 27, 2026, and testified under oath at the meeting of creditors held under section 341(a) of the Bankruptcy Code on November 2, 2026. Volt's counsel attended the meeting of creditors and questioned Mr. Ostrowski about, among other things, the Debtor's business, revenue and assets. Mr. Ostrowski

testified, among other things, that the lease of the Debtor's pickup truck has ended and that the Debtor does not currently own or lease any vehicle. Declaration of Barry E. Janay, dated November 10, 2026 ("Janay Decl."), ¶¶ 2–4.

6. On September 3, 2026, the Debtor filed an amended Summary of Assets and Liabilities, an amended Schedule A/B and an amended Schedule G (ECF Nos. 11–13) (together, the "Amended Schedules").

7. The Debtor has produced to the U.S. Trustee, among other things, its 2024 and 2025 federal income tax returns, a pro forma income statement, a list of its open projects, and draft monthly operating reports for August and September 2026. Janay Decl. ¶ 5. On November 5, 2026, the Debtor filed its Plan of Reorganization under subchapter V and an application to retain its counsel, which includes counsel's verified statement disclosing its compensation. The Court has scheduled a status conference under section 1188 of the Bankruptcy Code for November 18, 2026 at 3:00 p.m.

8. Volt filed the Application on October 29, 2026, four days before the meeting of creditors. After its counsel questioned Mr. Ostrowski at that meeting, Volt re-filed the Application on November 6, 2026, still dated October 29, 2026, without addressing that testimony.

## OBJECTION

### A. Volt Bears the Burden of Showing Good Cause.

9. The scope of Rule 2004 is broad, but it is not unlimited. An examination "may not be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (quoting *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985)).

10. Relief under Rule 2004 is not automatic. "In granting a Rule 2004 examination request, the Court is required to make a finding of good cause for the examination." *Bibhu*, 2019 WL 171550, at *2. Relevance alone is not enough: "That documents meet the requirement of

relevance does not alone demonstrate that there is good cause for requiring their production. The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (citations omitted). Volt has not carried that burden.

**B. The Application Rests on Conclusory, Unsupported Assertions, Several of Which Are Contradicted by the Record.**

11. The Application is not supported by any declaration or affidavit from anyone with personal knowledge; it is signed only by counsel. Its stated basis is a list of supposed deficiencies in the Debtor's schedules (Application ¶ 10), introduced by the assertion that Volt "reasonably believes that the schedules and the petition are inaccurate" (*id.* ¶ 10(a)). Volt never says why. Its characterizations—an "apparent failure to disclose" (*id.* ¶ 11), omissions that are "particularly troubling" (*id.* ¶ 12), and circumstances that "raise questions" (*id.* ¶¶ 10(f), 10(n), 18)—identify no question and no fact. A belief without facts is not good cause. These assertions are entitled to no weight and should be disregarded.

12. Several of Volt's assertions are simply wrong. Volt asserts that "it is inconceivable that Debtor listed zero receivables" (*id.* ¶ 10(g)). The amended Schedule A/B, filed on September 3, 2026, discloses $83,016.91 in accounts receivable. ECF No. 12, Part 3. Volt asserts that the Debtor failed to identify a lease for 358 Amboy Street (Application ¶ 10(i)). There is no lease to identify. The Debtor does not lease 358 Amboy Street or any other premises; it uses that location as its New York business address. Nothing requires a business to own or lease real property, and the amended Schedule A/B reports that the Debtor does neither. ECF No. 12, Part 9. The amended Schedule G nonetheless lists the 358 Amboy Street premises, qualified "if debtor a party," and a storage unit. ECF No. 13, lines 2.7–2.8. The Debtor is not a party to either arrangement and will further amend Schedule G to remove those entries. It files this Objection now, rather than awaiting that amendment, because it must respond to the Application promptly. Volt concedes that the docket reflects amendments to the schedules, but says that the documents

"appear blank when downloaded" (Application ¶ 13). If Volt could not open a filed document, the remedy was to ask the Debtor's counsel for a copy, which Volt never did, not to seek a Rule 2004 examination.

13. Other assertions reflect a misunderstanding of the schedules. Volt faults the Debtor for not listing "tools and equipment" and "safety gear (PPE)" as inventory (*id.* ¶ 10(b)). Tools and equipment used to perform the Debtor's work are not inventory. The Debtor scheduled its tools and equipment, item by item, in Part 8 of the amended Schedule A/B. ECF No. 12, Part 8, line 50 and rider. Volt also asserts that the Debtor lists no vehicles "despite its construction business" (Application ¶ 10(e)). Nothing requires a construction company to own or lease a vehicle. As Mr. Ostrowski testified at the meeting of creditors in response to questioning by Volt's counsel, the lease of the Debtor's pickup truck has ended, and the Debtor rents a truck when one is needed. Janay Decl. ¶ 4.

14. The remaining items are not facts at all. Volt notes that the schedules list no office furniture (*id.* ¶ 10(c)), no intangible assets (*id.* ¶ 10(f)), no property held for others (*id.* ¶ 10(l)), and no payments to insiders (*id.* ¶ 10(m)), and that Part 8 is "incomplete" (*id.* ¶ 10(d)). Volt does not identify a single item of furniture, a single license or customer list of value, a single item of property held for another, or a single insider payment that it contends was omitted. That a schedule lists nothing in a category is not evidence that something was left out. That the Debtor's 2026 revenue declined from prior years (*id.* ¶ 10(j)) is unremarkable for a business that sought chapter 11 relief in August 2026. That the Debtor's website advertises construction services (*id.* ¶ 10(n)) shows only that the Debtor is doing what a debtor in possession is supposed to do: operate its business. The compensation of the Debtor's counsel (*id.* ¶ 10(k)) is disclosed in counsel's verified statement filed with its retention application. And the completeness of two other creditors' mailing information on Schedule E/F (*id.* ¶ 10(h)) concerns notice to those creditors, who may raise it themselves; it has nothing to do with Volt.

**C. The Application Seeks Discovery for Volt's Own Litigation Against the Debtor.**

15. "Once an adversary proceeding, or state court law suit as here, has been commenced, Rule 2004 discovery is usually not the appropriate means to obtain discovery." *Bibhu*, 2019 WL 171550, at *2. "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991). Courts have found cause for concern "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." *Bibhu*, 2019 WL 171550, at *2 (quoting *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002)).

16. *Bibhu* is directly on point. There, a creditor with a claim in the chapter 11 case had also sued in state court; the debtor was a defendant in that action, which was stayed as to the debtor. The court denied the creditor's Rule 2004 application in its entirety, finding that the creditor "is seeking Rule 2004 discovery for the improper purpose of obtaining discovery for the pending state court civil litigation." *Id. See also In re Cambridge Analytica LLC*, 600 B.R. 750, 753 (Bankr. S.D.N.Y. 2019) (denying application aimed at outside litigation: "[t]he cost of such compliance would benefit only the outside litigation at the expense of the bankruptcy estate and its creditors. Such a result cannot be countenanced by the Court.").

17. The same is true here. Volt is the plaintiff in the State Court Action against the Debtor. It demands "[a]ll documents relating to all of Debtor's transactions with VOLT ELECTRIC INC." (Application, Schedule A, Part II, ¶ 28); all construction contracts, subcontracts, bids, proposals, invoices, payment applications and change orders (*id.* ¶¶ 13–14); and examination on "[a]ny pending or contemplated litigation involving the Debtor" (*id.*, Part I, ¶ 13). Those requests go to the merits of Volt's own claim. In *Coffee Cupboard*, Chief Judge Duberstein refused to order production of "all documents concerning transactions between the Debtor and KingsOil," the subject of a pending state court action, because "the above request could only be used in connection with the state court litigation." 128 B.R. at 517. Volt's request for every document concerning its own transactions with the Debtor stands on the same footing. Volt may respond that pending litigation "and possible use of such testimony in collateral

litigation is not a sufficient reason for denying the examination." *Id.* at 516. But the question is what the discovery is for, and *Coffee Cupboard* drew exactly that line. Volt's requests are aimed at its own claim, and its only estate-related justification, the supposed gaps in the schedules, fails for the reasons set out in Section B above. The general statements about the breadth of Rule 2004 in the cases Volt cites (Application ¶¶ 8–9) do not displace these limits, which apply within that breadth.

18. Volt's claim will be resolved through the claims process, a contested matter in which the Part VII discovery rules apply. Fed. R. Bankr. P. 9014(c). Volt may not use Rule 2004 to get that discovery now.

**D. Volt Has Already Examined the Debtor, and the Remaining Requests Duplicate Information Already Provided.**

19. Volt has also already examined the Debtor: its counsel questioned Mr. Ostrowski under oath about, among other things, the Debtor's business, revenue and assets. Janay Decl. ¶¶ 3–4. A single creditor's parallel examination of subjects already covered at the meeting of creditors and in the Debtor's production to the U.S. Trustee, at the estate's expense, "would duplicate efforts, wasting estate resources." *Cf. In re Celsius Network LLC*, No. 22-10964 (MG), 2022 WL 16641755, at *3 (Bankr. S.D.N.Y. Nov. 2, 2022) (denying creditor's Rule 2004 request in light of ongoing investigations).

**E. Volt's Request to Dismiss the Case Cannot Be Granted on a Rule 2004 Application.**

20. Volt asks the Court to dismiss this case under section 1112(b) (Application ¶¶ 15–20, 21(e)). Section 1112(b)(1) permits conversion or dismissal only "after notice and a hearing" and upon a showing of cause. That requires a motion stating the grounds with particularity. Fed. R. Bankr. P. 9013, 9014(a). The Application identifies no cause; it speculates that cause might exist "[i]f examination and production establish" it (Application ¶ 19). Nor does Volt identify any defect in the Debtor's eligibility under section 109(d) or in the authorization of its petition; it simply recites that those requirements exist (*id.* ¶ 15). Volt's own proposed order concedes that

any request for dismissal "shall be determined upon a properly noticed motion and an appropriate evidentiary record." The request for dismissal should be denied.

**F. The Requested Discovery Is Overbroad, Seeks Privileged Information, and Would Expose Confidential Commercial Information.**

21. The requested discovery is also overbroad: twenty-eight categories of documents, many reaching "all" records on a subject over three years, and examination of two officers on seventeen topics. That scope is out of proportion to a subchapter V case. *Cf.* 11 U.S.C. § 1188(a) (status conference held "to further the expeditious and economical resolution of a case under this subchapter").

22. Several requests also call for privileged material. Volt seeks examination on the preparation and verification of the Debtor's petition, schedules and statement of financial affairs and the persons who prepared them (Application, Schedule A, Part I, ¶¶ 14–15), and all documents relied upon to prepare them (*id.*, Part II, ¶¶ 21–22, 24). Those requests reach the Debtor's communications with its bankruptcy counsel and counsel's work product. Rule 2004 does not override the attorney-client privilege or the work-product doctrine.

23. Volt is also a participant in the construction industry in which the Debtor competes for work. It demands the Debtor's customer lists and databases, customer contracts, bids, proposals and records of its ongoing and pending projects (Application, Schedule A, Part II, ¶¶ 11, 14–15). That is confidential commercial information that this Court may protect. 11 U.S.C. § 107(b)(1); Fed. R. Bankr. P. 9018. Volt offers no explanation of why it needs that information to evaluate the Debtor's schedules.

**G. The Application Is Procedurally Defective.**

24. The Court's procedures permit Rule 2004 orders to be submitted ex parte only in the form of the Court's form order, which leaves the time to produce, object or move to quash to Rule 45 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 9016. Volt's proposed order instead would compel examinations "no less than five (5) days after

service” of the order and subpoena, on a date selected by Volt’s counsel. Its timing provisions are also internally inconsistent (twenty days’ notice for production; production ten days before the examination; service by mail thirty days before the examination).

25. Volt also did not obtain a return date before filing and serving the Application as a motion, as E.D.N.Y. LBR 5070-1(a) requires. And Volt did not contact the Debtor’s counsel before filing the Application on October 29, 2026 or before re-filing it on November 6, 2026 (Janay Decl. ¶ 6), although this Court’s procedures provide that discovery motions may not be filed until the parties have conferred.

26. The Debtor reserves all rights, including to supplement this Objection, to object to Volt’s claim, to assert setoff and recoupment, to seek a protective order, and to object to any subpoena.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court deny the Application in its entirety, deny Volt’s request for dismissal under section 1112(b) of the Bankruptcy Code, and grant such other and further relief as the Court deems just and proper.

Dated: November 10, 2026

LAW OFFICE OF BARRY E. JANAY, P.C.
*Counsel to the Debtor and Debtor in Possession*

By: /s/ Barry E. Janay
Barry E. Janay, Esq.
354 Eisenhower Parkway, Suite 1250
Livingston, New Jersey 07039
(908) 374-0811
bjanay@lobej.com